48 So.2d 223

**CHANDLER v. GOODSON.**

**4 Div. 594.**

Supreme Court of Alabama.

Oct. 19, 1950.

E. O. Baldwin and A. R. Powell, Jr., of Andalusia, for appellant.

Jas. M. Prestwood, of Andalusia, for appellee.

BROWN, Justice.

This is an action of trespass by the appellee against the appellant, seeking to recover damages for wounds and injuries inflicted on appellee's person in an assault and battery committed by appellant on appellee.

The complaint consists of two counts. The first count avers that "On to wit November 17, 1947, the defendant willfully,

intentionally and violently cut plaintiff with a knife on the neck, arms and back and as a proximate result of said willful, intentional cutting plaintiff suffered great loss of blood and was permanently injured and because of said injuries plaintiff suffered great pain and mental anguish and was caused to spend large sums of money for doctor and medical bills."

Count two avers that "Plaintiff, Ralph Goodson, a minor suing by his next friend and father, J. W. Goodson, claims of the defendant the sum of $10,000.00 as damages for an assault and battery committed by the defendant on the plaintiff, viz., on the 17th day of November, 1947."

Before pleading the defendant demurred to the complaint as a whole and to count one thereof. The grounds of demurrer are patently not well taken. The court did not err in overruling the same.

The defendant pleaded not guilty and special pleas some of which set up self defense, averring that plaintiff assaulted him and that he used no more force than necessary to repel the alleged assault on him by the plaintiff. A demurrer to the special pleas was overruled.

Before entering upon the trial of the case the plaintiff by leave of the court amended his complaint by alleging that he had "reached the age of 21 years since the filing of this suit," and by striking from each of said counts, "a minor suing by his next friend and father, J. W. Goodson."

■ The defendant had the burden of proving the substance of the issue presented by his special pleas. Alabama Great Southern R. Co. v. Frazier, 93 Ala. 45, 9 So. 303, 30 Am.St.Rep. 28; 2 Mayf.Dig. § 4, p. 211; Evans v. Walker, 237 Ala. 385, 187 So. 189.

The evidence shows without dispute that the difficulty between the plaintiff and the defendant in which the plaintiff was severely cut and stabbed with a knife took place on the public road leading toward Brantley, Alabama. Plaintiff was on his way to his uncle's residence which was located on a hill just ahead from 150 to 200 yards from the place of the difficulty. Johnny Butler, a cousin of the plaintiff, lived just off the road a short distance from the place where plaintiff stopped his car, on the righthand side of the highway. The defendant was going in the opposite direction toward Rose Hill on the road to Andalusia. Soon after the plaintiff stopped his automobile, defendant's automobile appeared on the hill and defendant drove up to the place where plaintiff's car was standing. The defendant's car reached this point about six o'clock and one phase of the evidence goes to show that as defendant drove up to the plaintiff's car he addressed him and said: "Fellow, can't you dim your lights?" and plaintiff replied, "I have my lights on dim" and showed him by putting the bright lights on and then back on dim. Defendant then said to the plaintiff, "What are you doing in this part of the country anyway," and plaintiff said, "We came here to see Mr. Butler." Then the defendant said, "Mr. Johnny Butler lives here and Mr. Holley Butler lives up on the hill" and asked, "What is your name?" Plaintiff replied "Goodson." Plaintiff then asked "What's your name?" and defendant replied "Chandler." The plaintiff then cranked up and started to drive off and the defendant started laughing and plaintiff said, "What's so funny?" and he said, "Oh, nothing, get out."

The plaintiff's evidence goes to show that he got out on the opposite side from where he was sitting at the steering wheel and defendant came around in front of his car and struck plaintiff and knocked or shoved him down on the right side of plaintiff's car to the back and got astride plaintiff's prostrate form and inflicted several wounds with his knife on plaintiff's person.

There is no evidence that the plaintiff, a boy 19 years of age, was armed and he was in his own car with his wife and a man by the name of Morgan. This evidence warranted an inference which it was within the province of the jury to draw that the defendant became incensed at the plaintiff (the parties at that time being perfect strangers) because the defendant assumed plaintiff had not dimmed his lights when the defendant gave a signal as he came over the hill approaching the scene.

The defendant's evidence on the other hand goes to show that after he invited

the plaintiff to get out of the car and he did get out, the defendant clinched with the plaintiff and cut him in several places on his person, inflicting serious wounds on plaintiff's person, which are illustrated by the testimony of Dr. Ray Evers, whose qualifications as an expert witness were not questioned, but were admitted in evidence by defendant's counsel, as follows:

"Mr. Powell: Let the record show that the defense admits the Doctor's qualifications.

"By Mr. Prestwood:

"Q. You are Dr. Ray Evers, A. I am.

"Q. You were a practicing physician in Covington County on November 17th, 1947? A. I was.

"Q. At that time did you know Ralph Goodson here? A. I did, yes sir.

"Q. Do you know where he was employed? A. Yes, I do.

"Q. Where was he employed? A. He was working for me at the Hillcrest Infirmary.

"Q. On the evening of November 17th, 1947 did you see Ralph Goodson? A. I did.

"Q. What was his condition at the time? A. He had received several severe wounds about the neck and body. He was in a critical condition and hemorrhaging quite badly.

"Q. Did he have on his clothes? A. He did, yes sir.

"Q. Did his clothes have blood on them? A. They were very bloody, yes sir.

"Q. Where did you first see him, at the Hillcrest Infirmary? A. I did, yes sir.

"Q. Did you send him to the operating room? A. I did.

"Q. Was he conscious at the time you saw him out there? A. He was, yes sir.

"Q. Doctor, if you will step down here and point out to the jury the different wounds that he had on him at that time. A. Start at the back here and all the way from here and this was cut in to his lung, this cut was deep enough that it went into the pleura, the lung tissue, all the way through the backbone and the knife hit the backbone and stopped and this was cut under this very deep and also a stab wound into the lung and also a cut wound here and here and over here and he was cut here and down to the lung here and one under here. (Demonstrating on the witness.) His arm was cut here and back down this way. His neck, you see there is a cut started here and cut here and cut here down to the juglar vein and a little stab on this side and cut here across this shoulder, a cut on his arm here around like this, and then one on this shoulder here.

"Q. From the cuts and wounds that he received and from your knowledge and observation and treating him for the same, is he injured permanently in any way? A. Yes * * *."

The general objection to the testimony of this witness was overruled without error. Sanders v. Knox et al., 57 Ala. 80.

The conflicting tendencies of the evidence on all the issues joined between the parties clearly made the case one for jury decision and the court did not err in refusing the affirmative charge requested by the defendant.

During the cross-examination of the plaintiff, the defendant brought out the fact that a cot was kept in plaintiff's hospital room during his confinement and recuperation. Defendant objected to the examination of plaintiff's wife in connection with this cot. The testimony is here set out in detail.

"Q. Mrs. Goodson, while your husband was in the hospital out there did you stay in the room with him? A. Yes sir.

"Q. Do you remember how many nights you stayed in the room with him? A. I would say about eight, anyway.

"Q. And what was the occasion of your staying in the room with him?

"Mr. Powell: We object.

"Mr. Prestwood: He brought out about the cot being in the room and we want to show why it was in the room.

"The Court: Objection overruled.

"Mr. Powell: We reserve an exception.

"Q. Do you know whether the hospital made a charge for the cot in the room that you stayed on? A. I am sure they did.

"Q. At that time was it not a fact that Ralph was in a critical condition? A. Yes sir, and I didn't expect he would live is the reason I stayed in the room with him.

"Mr. Powell: We object and move to exclude the answer.

"The Court: I will exclude 'and I didn't expect he would live' and leave in the other."

The defendant having brought out part of the transaction, the plaintiff was entitled to show the entire transaction although it may not be admissible as independent testimony. Catts v. Phillips, 217 Ala. 488, 117 So. 34; Cornett v. Brooks, 206 Ala. 566, 90 So. 787; Lanier v. Branch Bank at Montgomery, 18 Ala. 625. Moreover the objection was general, no grounds being stated, and the court was not required to cast about to determine what was in counsel's mind and such objection may be overruled without error when the evidence is not patently inadmissible. Great American Ins. Co. v. Pearson, 220 Ala. 664, 127 So. 233; Hardy v. Randall, 173 Ala. 516, 55 So. 997; Johnson v. Isley, 240 Ala. 217, 198 So. 348; Sanders v. Knox et al., 57 Ala. 80; Dryer v. Lewis, 57 Ala. 551.

The next error insisted upon by the appellant is that the court erred in overruling appellant's objection to a question propounded to a witness by appellee's counsel. For clarification, the record is here set out in detail:

"Q. Does your brother Jimmy usually fix a flat tire with his switch blade knife?

"Mr. Powell: We object.

"The Court: Overruled.

"Mr. Powell: We except.

"Mr. Prestwood: We withdraw the question if the court pleases."

We are unable to predicate error on such a situation as here presented where the question was withdrawn and was not answered. Page v. Hawk, 250 Ala. 26, 33 So.2d 8; Allison v. Owens, 248 Ala. 412, 27 So.2d 785; Gilliland v. Dobbs, 234 Ala. 364, 174 So. 784.

Appellant next insists that the trial court committed error in overruling his objection to a question propounded to defendant on cross-examination, as indicated below:

"Q. Now Mr. Chandler, since you cut this boy and before the trial of your case you conveyed or deeded away your property, haven't you? A. No sir.

"Q. Then what property you owned at the time you cut this boy you still own it? A. Now how did you say that last, that property.

"Q. After you cut this boy and before today, in between the time you cut him and today, you have deeded away your property, or some of it, haven't you? A. I haven't deeded no property.

"Q. Then if you are confronted with a deed showing that it was dated after you cut this boy and before today, it would be a forgery, wouldn't it?

"Mr. Baldwin: We object.

"The Court: Overrule it.

"Mr. Baldwin: We except.

"A. I don't understand how you are talking about.

"Q. You say you haven't deeded away your property since you cut this boy? A. I haven't made no deeds.

"Q. So then I asked you if you were faced by deeds purportedly signed by you and others that were dated between November 17th, 1947, the day you cut the boy and today, in other words if the deed was dated between those two times, it wouldn't be your deed? A. I haven't made no deed since then."

The scope and extent of cross-examination rests largely with the trial court, and, unless it appears that this discretion has been abused, the reviewing court will not reverse the trial court for such ruling. Davis v. Radney, 251 Ala. 629, 38 So.2d 867; Bates v. Chilton County, 244 Ala. 297, 13 So.2d 186; Louisville & N. R. Co. v. Martin, 240 Ala. 124, 198 So. 141. Moreover the objection was general, no ground being stated. Such general objections may be overruled without error when the evidence is not patently inadmissible. See authorities supra.

The trial court properly refused to give charges 15, 16, 19 and 20. These

charges pretermit that the defendant used no more force than was reasonably necessary to repel the assault. South Brilliant Coal Co. v. Williams, 206 Ala. 637, 91 So. 589; Murphy v. Coleman, 9 Ala.App. 625, 64 So. 185.

There is no evidence that a felonious assault was made by plaintiff upon the defendant, hence charge 22 was abstract and was properly refused.

Refused charge 21 is fully covered by given charge 24. Refused charge 25 was also covered by charge 24. Charge 27 is not only argumentative, but is substantially covered by given charge 26 and the oral charge. Charge E was properly refused as the acts hypothesized were no defense to willful injury. Alabama Great Southern R. Co. v. Frazier, 93 Ala. 45, 9 So. 303, 30 Am.St.Rep. 28. Moreover said charge was substantially covered by Charge A. Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4; Watt v. Combs, 244 Ala. 31, 12 So.2d 189.

No error appearing on the record, the judgment of the circuit court is due to be affirmed. It is so ordered by the Court.

Affirmed.

FOSTER, LAWSON and STAKELY, JJ., concur.