THE ESSEX COUNTY NATIONAL BANK

*v.*

HARRIET HARRISON, WILLIAM H. HARRISON and THOMAS P. EDWARDS.

[Decided May 10th, 1898.   Filed January 4th, 1899.]

1. A deed absolute in its terms is reduced to the grade of a mortgage by a concurrent writing in the nature of a defeasance clause, signed by the grantee. *Quære.* As to the effect of *Gen. Stat. p. 2106 § 21* upon the record of such a deed in the registry of deeds.

2. Under *Gen. Stat. p. 2106 § 22*, providing that "every mortgage shall be void and of no effect against a subsequent *bona fide* mortgagee or purchaser for a valuable consideration not having notice thereof, unless it shall be   *   *   * registered," the failure to so record simply deprives the holder of any benefit from the registry as a matter of notice, and does not make the mortgage void as to purchasers or encumbrancers with actual notice thereof.

3. A third person's possession of land is notice to a subsequent judgment creditor of everything in regard to his title which the creditor could have learned by inquiring of him.

4. A party who holds a legal title to property, but who is out of possession, cannot ask the aid of equity to remove a cloud on his title, which has in it none of the elements of fraud, accident or mistake, unless his title is perfectly clear and paramount to the supposed cloud, and he is not practically bringing ejectment in chancery.

Heard on bill, answer and proofs.

The complainant is a judgment creditor of the defendants Harriet Harrison and William Henry Harrison, and, by virtue of its judgment, has levied upon, sold and purchased at sheriff's sale, and now holds his deed for a piece of property situate in East Orange, Essex county, in which, at a time prior to the date of the judgment, Mrs. Harrison had a life estate and William Henry Harrison held the fee, subject to his mother's life estate, to the equal undivided one-half part. The object of the bill is to remove a cloud upon the complainant's title, so derived, in the shape of a conveyance made by the two Harrisons to the defendant Thomas P. Edwards, bearing date the 30th of March, 1895, and prior to the entry of complainant's judgment. The ground of such relief is that such conveyance, being absolute in its terms, was, nevertheless, reduced to the grade of a mortgage by a concurrent writing in the nature of a defeasance, signed by Edwards, reciting that the conveyance was made to secure the sum of $1,500 loaned by him to the Harrisons, and agreeing to reconvey the same upon payment of that money, with interest. The bill alleges that the deed to Edwards was recorded in the records of deeds of conveyance of Essex county shortly after it was made, but that the concurrent writing in the nature of a defeasance which rendered it a mortgage was never recorded, and hence the affair is brought within the scope of the twenty-first section of the Mortgage act (*Gen. Stat. p. 2106*), which declares that if in such case the defeasance is not recorded " the grantee in the said deed or conveyance shall not be entitled to or enjoy the benefits and advantages hereby given to a mortgagee."

The bill alleges, and it is an admitted fact in the case, that the defendant Edwards took possession of the premises as soon as the deed was made, and has since remained in the possession thereof.

The bill further alleges, and it is an admitted fact in the case, that the sum of $1,500 advanced by Edwards was not paid to the Harrisons, but to one Hawkins, who at the time held the

title to the premises by a deed from the sheriff, by virtue of a sale founded on a common-law judgment against the Harrisons and one Inston, which in turn was founded on a promissory note made by Inston and William H. Harrison and endorsed by Harriet Harrison, and that upon the payment of that money to Hawkins he conveyed the premises to the Harrisons, and they, by deed of the same date and executed and delivered at the same time, made the conveyance in question to the defendant Edwards.

*Mr. Alfred F. Skinner,* for the complainant.

*Mr. Samuel J. MacDonald,* for the defendants.

PITNEY, V. C.

The first question argued is whether or not the defeasance in question has the effect of reducing the conveyance to the grade of a mortgage, or, in other words, whether it gives the two Harrisons the right to redeem upon the payment of the money in question. I do not think that question is open to the least doubt. The deed of conveyance was no more than a mortgage, and if the object of the bill were to redeem the premises the complainant's case would be clear. But such is not the object of the bill, and the complainant, at the hearing, declined to accept such remedy.

The next question is as to the effect, under the statute, of the failure to record this defeasance and disclose by the record the true character of the transaction.

Now, the language of the act is that if the grantee shall fail to record the defeasance he " shall not be entitled to or enjoy the benefits and advantages hereby given to a mortgagee." By the word " hereby " is meant, not that particular section alone, but the whole act, of which it is a part ; and counsel for defendants contends that, in order to ascertain its meaning, we should go back to the origin of the clause in question and look at its original connection and surroundings.

The section in question is the fourth section of an act entitled

"An act to register mortgages," passed the 7th of June, 1799. *Pat. L. p. 402; Rev. of 1821 p. 463.* On the same day was passed Judge Paterson's "Act respecting conveyances," which provided for their proof and record and for the use of certified copies in place of the original as evidence in courts, &c.

We thus have two distinct acts, one relating to mortgages, the other to deeds.

The first section of that Mortgage act provided for the procuration, by the clerks of the county courts, of books in which an abstract of the mortgage can be recorded and for the recording thereof; other sections fix the fees for recording and provide for the discharge of the mortgage by an entry in the margin by way of cancellation. In short, the act provided a cheap mode of giving notice to all the world of the existence of the mortgage without incurring the labor and expense of transcribing it at length; and the tenth section provided that

"every such mortgage shall be void and of no effect against a subsequent *bona fide* mortgagee or purchaser of the same for a valuable consideration, not having notice thereof, unless it shall be acknowledged or proved and registered within thirty days after the signing and sealing and delivery of the same."

The whole scope of the act, then, was to confer a benefit upon the holder of the mortgage and to prevent any person from obtaining a superior right in the mortgaged premises, provided an abstract of it was recorded in a particular manner, thereby saving to the parties the expense of a record at length.

The several sections of that act were comprised in eight sections of the Revision of April 15th, 1846. *Rev. Stat. of 1846 p. 657.* The section here in question is the fourth of that act, and the fifth section is a substantial re-enactment of the tenth section of the original act.

The Revision of 1877 consolidated all the previous enactments concerning mortgages into forty-five sections, but those forty-five sections are classified under seven heads, and the fifth head refers to the registration of mortgages and contains fifteen sections. The twenty-first section of the whole act is one of the fifteen and corresponds with the fifth section of the previous

revision, and the twenty-second section corresponds with the fifth section of the Revision of 1846. Thus the original Mortgage act is, in a measure, kept by itself in subsequent legislation.

Now, counsel for defendants argues that, in looking for what is meant by the "benefits and advantages" given by the act to a mortgagee, we must look mainly, if not wholly, to the sections which refer to registry of mortgages and which composed the original act of Judge Paterson; "and looking at those," he argues, "we find that the principal ' benefit and advantage' is that the mortgagee may, by the mere registry of an abstract, give constructive notice to all the world of the existence of his mortgage and its contents." The contention is that the provisions of the act applicable to mortgages do not prevent the mortgagee from having his mortgage recorded at length in the registry of conveyances, under the tenth section of the act of 1799 (*Pat. L. p. 399*), and of the ninth and tenth sections of the Revision of 1846 (*Rev. of 1846 p. 647*), and of the twenty-fifth, twenty-sixth and twenty-seventh sections of the Revision of 1877, nor do they in anywise detract from the beneficial effect of such record as constructive notice to all the world.

Against this position it is argued with great force by the counsel of complainant that such a construction is inadmissible because it results in rendering the section under consideration entirely inoperative, since it was necessarily aimed at absolute conveyances recorded as such.

The section in question, and its effect upon a case like this, has, so far as I know and so far as counsel have been able to aid me, never been actually determined by any court in this state, though the machinery here used of an absolute conveyance and separate unrecorded defeasance has been availed of in innumerable cases since this legislation had its origin. Vice-Chancellor Dodd, in *Kline* v. *McGuckin, 9 C. E. Gr. 411* (at *p. 414*), does indeed say: "If, in the present case, the defeasance had been written, it is undeniable that the deed as recorded would be postponed to the liens of later date. But does the statute apply also where the defeasance is verbal [which was the case he had in hand]? My conclusion is that it does not." But he

did not have the actual case before him for consideration, and the words quoted are mere *obiter dicta*.

The question is not without difficulty, and I do not find it necessary to decide it, for two reasons.

In the first place—and this involves the next question argued—granted that the complainant's counsel is right in his contention as to the scope of this section, still the effect of it is simply to deprive the holder of it of any benefit from the registry of the instrument as a deed, as a matter of notice to all the world. He must stand as if his deed were not recorded.

Then the next question is, what is the effect of that result in the present case?

It is admitted that the grantee took immediate possession. And it is argued by the counsel of defendants that possession itself is notice.

In answer to this, however, counsel for the complainant contends that we must look to the next section of the statute for the character of the notice; and that section declares the instrument void as to a certain class of persons if not recorded, and that such is the category in which the defendant Edwards finds himself here—that his deed is absolutely void as against a subsequent judgment creditor or *bona fide* purchaser not having notice thereof. He contends that the notice there referred to is a notice of the actual character of the instrument, and that the possession of the defendant Edwards, under his deed, could not have the effect of giving the complainant notice of the actual character of this instrument.

The complete and simple answer to this argument, as it seems to me, is that the effect of the constructive notice, due to possession, is a notice of everything which a party interested in the premises would get by inquiring of the party in possession. In other words, the actual possession of the premises puts any person having a claim, or seeking to acquire title thereto, to an inquiry of such person as to what his title actually is; and until the complainant has actually made inquiry and has received an untrue answer from Mr. Edwards in this case, he is not in a position to say that he is not chargeable with notice of what his

Essex County Nat. Bank *v.* Harrison.

actual right and title was and is. *Non constat,* if he had inquired of Mr. Edwards, he would not have told him the precise situation of affairs.

The authorities in this state on this topic are uniform, and, I think, fully support the defendants' position. *Havens* v. *Bliss, 11 C. E. Gr. 363; Wanner* v. *Sisson, 2 Stew. Eq. 141, 150; Cooke* v. *Watson, 3 Stew. Eq. 345, 352.*

For these reasons, it seems to me that the complainant's case fails.

But, in the second place, I think this court is, in the present situation of the affair, without jurisdiction, and such want of jurisdiction is set up in the answer. The complainant's case does not appeal to the ordinary jurisdiction of the court. Neither fraud, accident nor mistake is set up. Its standing is simply that of a person who holds an absolute legal title, but is out of possession, and asks the court to remove a cloud upon his title which has in it none of the elements of fraud, accident or mistake. In order to induce action on the part of the court, his own title must be perfectly clear and paramount to the supposed cloud, and he must not be in the situation of bringing an action of ejectment in the court of chancery.

The doctrine of *Sheppard* v. *Nixon, 16 Stew. Eq. 627,* applies here.

Under these circumstances and in this state of the law, it seems to me that the complainant, before coming here to ask the aid of this court, should first establish its title at law. There is no difficulty in the way of its so doing. If its contention here be right it can maintain an action of ejectment, and when it has done that and obtained either the possession or the immediate right to possession, and not before, it may be—I do not say that it will be—in a position to ask the aid of this court to perfect its record chain of title by declaring that its judgment lien was prior to the conveyance in question.

My opinion is that the complainant's bill must be dismissed unless it shall elect to bring an action of ejectment, in which case the bill will be retained a sufficient time to permit such

7

action to be brought to trial and complainant's right finally determined.

I do not find it necessary to determine, at present, whether or not the defendant Edwards is entitled, under the circumstances, to be subrogated to the rights of Hawkins, under his title, at sheriff's sale. Should the complainant decide to bring an action of ejectment, and the bill is retained for that purpose, and the complainant succeeds in that action, the defendant Edwards will have an opportunity to present that defence by a proper pleading in answer to the complainant's title.