94 N.J. Super. 307 (1967)
228 A.2d 95
ORLAND PROPERTIES, INC., A CORPORATION, PLAINTIFF,
v.
MAURICE A. BRODERICK AND NATALIE BRODERICK, HIS WIFE, ELSIE G. BUTT AND EUGENE W. BUTT, HER HUSBAND, JOSEPH N. LA PIETRA AND ELIZABETH LA PIETRA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 20, 1967.
*309 Mr. Abraham P. Bab, attorney for plaintiff.
Messrs. Wittman, Anzalone & Bernstein, attorneys for defendants (Mr. Frederick L. Bernstein, appearing).
MATTHEWS, J.S.C.
This action was instituted by Orland Properties, Inc., a New Jersey corporation, seeking partition *310 of certain realty commonly known as Lot 6 in Block 59, Borough of Fort Lee, Bergen County. Defendants La Pietra have counterclaimed to quiet title. The principal facts involved are not disputed. Plaintiff has moved for a judgment on the pleadings, and in disposing of the motion I am considering such additional facts as have been supplied by defendants as being true. At the outset, I observe, and the parties concede, that defendants Butt are merely nominal parties hereto, having at all times acted as agents for defendants La Pietra. The matter has been dismissed as to them.
Defendants La Pietra purchased the lot in question during the year 1952 from Mary T. Bradley, administratrix of the estate of John E. Fitzpatrick. The deed was filed in Bergen County on June 9, 1952. The purchase price paid was the sum of $500, together with a $29.22 tax adjustment. There is nothing in the record to indicate that the consideration paid was inadequate or unfair. The property in question had originally been owned by John E. Fitzpatrick, who died intestate on June 12, 1950, a resident of Manchester, New Hampshire. At his death Fitzpatrick left three brothers, Charles, Henry, and Michael, and a sister, Margaret H. Glancy, who survived him. Another sister, Alice Broderick, predeceased decedent, having died in 1947, leaving four children surviving her: Maurice A. Broderick, Lucy Brady, Alice Broderick and Marguerite M. Hurley. In 1952 the La Pietras lived in a home that adjoined the property in question. At the death of Fitzpatrick they expressed a desire to acquire the land in question, which was a vacant lot, to increase the size of their residential property. The purchase was consummated as indicated, and the conveyance was made by an administratrix' deed. The purchase price was paid and the administratrix, in turn, accounted for the sum received to the heirs at law of Fitzpatrick, and subsequently paid the same to them in proceedings taken under New Hampshire law. Thereafter, defendants took possession of the property and have continuously remained in possession thereof until this time.
*311 Sometime thereafter the La Pietras were informed that the title which they received from the administratrix may not have been good in that title to the property in question had descended at decedent's death to his heirs at law. They were not successful in having the attorney who represented them at the time of purchase, correct the property defect. They subsequently engaged another attorney who made various efforts to obtain confirmatory deeds from the heirs of Fitzpatrick, but he was unsuccessful in these attempts. Subsequently, under advice of counsel, they attempted to perfect their title by means of a municipal tax lien foreclosure. They permitted the municipal real estate taxes on the lot to remain unpaid, suffered certificates of tax sale to be sold and vested in a niece, and thereafter gave instructions for the institution of a foreclosure action thereon. During the year 1961 such foreclosure proceedings were taken in this court and the usual affidavit of inquiry was filed. It was the filing of this document that brought the representatives of plaintiff on the scene. Plaintiff corporation is an alter ego of one Herbert Harvey, who has been described as a specialist in the acquisition of outstanding interests in tax lien proceedings in this State. Learning of the difficulties which existed with respect to the title in question, Harvey, using the filed affidavit of inquiry as a guide, contacted each of the heirs listed therein and solicited, with the exceptions hereinafter noted, deeds conveying their claimed interests for a nominal consideration. The exceptions included one Mary G. Kelly, the daughter of Margaret Glancy (who died a widow in 1955) and Maurice A. Broderick and his wife Natalie. Mrs. Kelly informed the La Pietras of Harvey's efforts and executed a deed to them. The Brodericks declined to give any deed and have been made parties to this action; they have defaulted both as to the complaint and counterclaim.
The efforts of Harvey's interests to obtain the title during the tax sale certificate foreclosure proceedings consisted of the following device: One Freda Solomon, who was purportedly *312 an officer and director of plaintiff corporation, held a judgment against Hudson Trading Corporation and Harvey. As holder of the judgment, she claimed to have an interest in Hudson's realty. When Hudson obtained the deeds from the Fitzpatrick heirs, Freda was in a position to compel assignment of the outstanding tax sale certificates on the property. Freda then sued the Brodericks and La Pietras to foreclose the certificates. This effort was defeated when the La Pietras paid the full amounts due on the tax sale certificates with interest and costs. The certificates were discharged and cancelled of record. Thereupon, the Harvey interests filed this action.
Plaintiff's position may be simply stated. It argues that the La Pietras never purchased the premises in question because the attempt by the administratrix to convey was a legal nullity. The only title that the La Pietras can be said to have is that portion thereof (1/20) obtained through the deed given by Mrs. Kelly. Plaintiff characterizes defendants' attempts to quiet title as one asking this court to take the title from a successful competitor, the plaintiff, and to bestow it on defendants. Defendants, of course, rely heavily on the opinion of the Supreme Court in Bron v. Weintraub, 42 N.J. 87 (1964), judgment on mandate affirmed 45 N.J. 1 (1965).
Although decedent died a resident and domiciliary in the State of New Hampshire, the law governing the devolution of his realty located in New Jersey is governed by the law of this State. Pratt v. Douglas, 38 N.J. Eq. 516 (E. & A. 1884). Under our law, at decedent's death the title to his realty passes directly, in the case of intestacy, to his heirs. The administrator acquires no right or power therein. An administrator is given no power of sale over realty except that authorized by statute which arises when the personal estate of decedent is insufficient to meet his debts or obligations. See N.J.S. 3A:24-16 et seq. As has been stated by Judge Clapp in his work on Wills and Administration, § 1025:
*313 "It follows that the general administrator of an intestate decedent has no control over the decedent's realty except in one case provided by statute."
The principles just enunciated represent the law of this State with respect to the rights of heirs and administrators in real property left by an intestate decedent. As such, this court is bound by that law. This court, however, as a court of equity is not bound to apply principles of law, even fundamental principles such as these, in situations where the facts do not warrant such application. While here the law is clear, its application is not.
Under the facts adduced here, it is apparent that defendants received poor advice in accepting a deed from the administratrix. Likewise, the administratrix acted under poor advice or misapprehension when she purported to convey to defendants the interest in the realty held by the heirs. Nevertheless, what may have been a vain act on the part of the administratrix must be regarded as having received life by her act of accepting a fair consideration for the property, reporting the sale to the heirs, accounting therefor to them, and ultimately distributing the proceeds to them. With these acts the heirs, having raised no objection thereto, should be considered to have ratified the act of the administratrix, who must be regarded as having acted, under the circumstances presented, as their agent in the transaction. They should now be estopped from challenging the title conveyed by the agent, the administratrix, at this time. Cf. Birkholm v. Wardell, 42 N.J. Eq. 337 (Prerog. 1886); Webb v. Updike-Kennedy Co., Inc., 116 N.J. Eq. 340 (Ch. 1934). Since this is so, the rights claimed by plaintiff here must be regarded as having been derived from the heirs and, as such, may also not be asserted against defendants in this action. The estoppel, of course, has been recognized by Mrs. Kelly in her act of conveyance, and also, in effect, by the Brodericks, by defaulting both as to the complaint and counterclaim herein.
While it is said that equity follows the law, it is equally true that equity will never suffer a wrong without a *314 remedy. Under the law the title of the heirs would be regarded as absolute and defendants would be left remediless. Under such a conclusion defendants would have suffered a legal wrong and the heirs would have been placed in a position of unjustly taking advantage of the situation to which they had given their assent, by resorting to strict legal considerations. In such circumstances equity has the obligation to recognize rights in defendants which the law does not recognize as existing. Under the holding made here it cannot be said that plaintiff has been deprived of any rights. It was perfectly and fully aware of the situation as it existed with respect to the title. It sought to take advantage of a legal position and, as it has admitted, regarded itself as a competitor of defendants. Its remedies, if any exist, must be against the heirs.
Plaintiff's argument also raises the inference that this court cannot estop the heirs and quiet the title to the premises in question in defendants because of the possible rights of dower and curtesy in the spouses of the heirs at law. There is nothing in the record to show that these individuals were unaware of the events as they transpired. Indeed, the inference is that they were aware of the circumstances, since they have executed deeds to plaintiff with the exceptions noted. In any event, their rights must be asserted against the respective spouses, each of whom has received his share of the full value of the property.
A judgment will be entered quieting the title to the premises in question in defendants La Pietra. No costs.